IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 19-cr-00472-WJM

UNITED STATES OF AMERICA

    Plaintiff,

v.

1. JAMES MICHAEL AUSTIN,

    Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by Jason R. Dunn, United States Attorney for the District of Colorado, through Assistant United States Attorney Gregory A. Holloway, and the defendant, James Michael Austin, personally and by counsel, Martha H. Eskesen, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1, the CARES Act, 50 U.S.C. § 15002(b), and District Court General Order 2020-4.

### I. AGREEMENT

The defendant agrees to plead guilty to Counts 1, 2, 3 and 4 of the Indictment, charging the following violations: Count 1: Title 18, United States Code, Section 1542, False Statement in a Passport Application; Count 2: Title 18, United States Code, Section 1028(a)(3) and (b)(2)(B), Possession with Intent to Use or Transfer Five or More Identification Documents or Features; and, Counts 3 and 4: Title 18, United

Court Exhibit
1

States Code, Section 1028A, Aggravated Identity Theft. As part of this agreement, the defendant agrees to waive certain appellate rights, as explained in greater detail below.

In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the United States agrees to: (1) recommend the Court give the defendant full credit for acceptance of responsibility per United States Sentencing Guidelines (USSG) § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing; (2) recommend a sentence at the bottom of the guideline range (plus 24 months to run consecutively to that range) as ultimately calculated by the Court; and (3) recommend that the 24 month sentences for Counts 3 and 4 run concurrently to each other and consecutive to Counts 1 and 2. The defendant agrees to waive certain other appellate rights as set forth and detailed below.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 8; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

For Count 1, False Statement in a Passport Application:

1. The Defendant made a false statement in an application for a United States passport.

2. The Defendant made the statement intending to get a United States passport for his own use.

3. The Defendant acted knowingly and willfully.

*18 U.S.C. § 1542.*

For Count 2, Possession with Intent to Use or Transfer Five or More Identification Documents or Features:

1. The Defendant knowingly possessed five or more identification documents, authentication features, or false identification documents;

3

2. The Defendant did so with the intent to unlawfully use or transfer the documents or features;

3. The identification documents were not issued lawfully for the use of the Defendant;

4. The identification documents, authentication features, or false identification documents were or appear to have been issued by or under the authority of the United States, or the possession, transfer or use of the identification documents, authentication features, or false identification documents was in or affected interstate or foreign commerce, or the identification document or false identification document was transported in the mail in the course of the possession prohibited by this section.

*See United States v. Alejandro*, 118 F.3d 1518 (11th Cir. 1997).

"Identification document" means a document made or issued by or under the authority of a governmental entity "which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." 18 U.S.C. § 1028(d)(3).

"False identification document means of a type intended or commonly accepted for the purposes of identification of individuals that:

(A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and

4

(B) appears to be issued by or under the authority of the United States Government, a State . . . ." 18 U.S.C. § 1028(d)(4).

"Authentication feature" means any "certification, symbol . . . sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1).

"False authentication feature" includes an authentication feature that – "(C) appears to be genuine, but is not." 18 U.S.C. § 1028(d)(4).

For Counts 3 and 4, Aggravated Identity Theft:

1. The Defendant knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person;

2. The Defendant knew that the means of identification belonged to another actual person;

3. The Defendant transferred, possessed, or used the means of identification of another person during and in relation to a felony enumerated in § 1028A(c).

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any – (A) name, social security number, date of birth, official State or government issued driver's license or identification number . . . ." 18 U.S.C. § 1028(d)(7).

## III. STATUTORY PENALTIES

The statutory penalty for Count 1 is not more than 10 years imprisonment, not more than a $250,000 fine, or both; not more than 3 years supervised release; restitution; and a $100 special assessment fee, each count.

The statutory penalty for Count 2 is not more than 5 years imprisonment, not more than a $250,000 fine, or both; not more than 3 years supervised release; restitution; and a $100 special assessment fee, each count.

The statutory penalty for Counts 3 and 4 is 2 years imprisonment to run consecutively to any term of imprisonment imposed for the underlying felony, not more than $250,000 fine, or both; not more than 3 years supervised release; restitution; and a $100 special assessment fee, each count.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is sometime in 2017 and the date on which relevant conduct ended is July 26, 2017, both dates being approximate and inclusive.

The parties further agree as follows:

On July 26, 2017, an individual presenting himself as Michael James Fisher ("defendant") applied for a U.S. passport at the Colorado Passport Agency in Aurora, Colorado. The defendant was also seeking passports for his two minor children and his wife. The Passport Agency would not immediately issue the passports because of

irregularities in the application and the defendant became disruptive. The Passport Agency referred the application to the United States Department of State Diplomatic Security Service ("DSS").

The information that the defendant presented to the Passport Agency comprised false identification, historical and geographic information (identified below in brackets), including the following:

- Application for a U.S. Passport:
    - Michael James Fisher, [FALSE]
    - DOB 11-22-1978, [FALSE]
    - Place of birth Frankfort KY, [FALSE]
    - SSN 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, [FALSE]
    - Parental Information: Jonah Fisher, 3-12-1952, KY [FALSE]
    - Parental Information: Gwenyth Harper, 8-8-1955, KY [FALSE]
    - Signed under penalty of perjury.
- Supplemental Questionnaire:
    - Michael James Fisher, [FALSE]
    - DOB 11-22-1978, [FALSE]
    - SSN 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, [FALSE]
    - Place of birth Frankfort, KY, [FALSE]
    - Father Jonah Fisher, 3-12-1952, KY, [FALSE]
    - Mother Gwenyth Fisher, 8-8-1955, KY, [FALSE]
    - Brother James Fisher, 10-29-1975, [FALSE]
    - Signed under penalty of perjury.

- Utah Commercial Driver License [Identification Doc 1]
    - Michael James Fisher, [FALSE]
    - DOB 11-22-1978. [FALSE]
- Social Security Card [Identification Doc 2]
    - Michael James Fisher, [FALSE]
    - SSN 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, [FALSE]
    - Issued on 10-13-2016.
- Established Certificate of Birth and Affidavits [Identification Doc 3]
    - Michael James Fisher, [FALSE]
    - DOB 11-22-1978, [FALSE]
    - Place of birth Frankfort, KY, [FALSE]
    - Mother Gwenyth Harper, 8-8-1955, KY, [FALSE]
    - Father Jonah Fisher, 3-12-1952, KY, [FALSE]
    - Signed under penalty of perjury,
    - Notarized by Terry Mitchell with Notary Seal from Wisconsin. [False Authentication Feature 1]
- School Enrollment Form
    - Information from an alleged Amish school in Wisconsin, [FALSE]
    - Notarized by Terry Mitchell with Notary Seal from Wisconsin. [False Authentication Feature 2]
- Birth Affidavits
    - Jeremiah Fisher, uncle from Wisconsin, [FALSE]
    - Hannah Mosin, midwife at birth in Wisconsin, [FALSE]

- o   Both were notarized by Terry Mitchell with a Notary Seal from Wisconsin. [False Authentication Feature 3 and 4]
- Medical Examiner's Certificate for a Commercial Driver
  - o   Michael Fisher, ME Driver License;
  - o   Signed by Christopher Angello, D.C., of Colorado.
- ANB Bankcard for Michael J. Fisher
- CreditOne Bankcard for Michael Fisher
- Affidavit of Hannah Mossin about the birth of Michael Fisher. [FALSE]
- British Airways First Class Ticket to London on 8-3-17.
- Kentucky Birth Certificate for Michael James Fisher. [Identification Doc 4]

The defendant also presented application information for his wife Kylie Fisher and his two minor children, Christopher Fisher and Cullen Fisher. Information throughout these applications was also false. In the interview described below, the defendant took accountability for his crimes. In addition to the false statements, the additional false documents as to his wife and children included the following:

- Social Security Card, Kylie Fisher, 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 [Identification Doc 5]
- Established Certificate of Birth and Affidavits for Kylie Fisher Notarized by Terry Mitchell with Notary Seal from Wisconsin. [Identification Doc 6 and False Authentication Feature 5]
- Birth Affidavits Notarized for Kylie Fisher by Terry Mitchell with Notary Seal from Wisconsin. [False Authentication Feature 6 and 7]

- Statement of Consent for Issuance of a Passport for Christopher Fisher Notarized by Terry Mitchell with Notary Seal from Wisconsin [False Authentication Feature 8]
- James Michael Fisher KY Driver License [Identification Doc 7]
- A fake order of the Superior Court of California granting Kylie Fisher sole legal custody of Cullin and Christopher Fisher.
- Statement of Consent for Issuance of a Passport for Cullin Fisher Notarized by Terry Mitchell with Notary Seal from Wisconsin [False Authentication Feature 9]

The order purporting to be from the Superior Court of California, Los Angeles County, which contained a purported signature of Judge Virginia Keeny, is falsified. The court order claimed to give sole custody of the children, from another false person named James Michael Fisher, to the defendant's spouse, Kylie Fisher. Judge Keeny is a real judge of the Superior Court. The falsified order appears to be authentic and contains the name, title, and position of a real judge, but the judge's signature is forged.

The defendant was born James Michael Masterson on October 29, 1975 in Baker City, Oregon. He legally changed his name to James Michael Austin on September 13, 1999. He has also used the alias Dallas Donald Hoffecker, DOB February 7, 1968. Dallas Hoffecker is a deceased brother of the defendant. The defendant's biological father is James Austin Sr., DOB 3-12-1956. However, the defendant's only birth certificate of record lists his parents as Lynda Ann Wright and Freddie L. Masterson.

James Austin, the defendant's biological father, identified the defendant for investigators and confirmed he is in fact the defendant's biological father.

On March 27, 2018, the defendant was arrested in Texas and a search warrant was executed at his residence. During the search, a notary stamp bearing the name Terry Mitchell of Wisconsin was recovered. This was the same stamp used on the paperwork presented in support of his passport application described above. Terry Mitchell is a real person and he was a notary in Wisconsin until his death in 2009. All of the forms that bore Terry Mitchell's stamp also contained forged signatures of Terry Mitchell. These signatures were dated long after Mitchell's death.

The defendant was interviewed by SA Penrod on March 27, 2018. The interview was audio recorded. The defendant was read, signed, and waived his rights prior to the interview. During the interview, the defendant admitted to presenting fraudulent information in the passport application. He took responsibility for the fraudulent information submitted in his wife Kylie's passport application as well as the fraudulent information in the applications for their two children. He discussed how he has open warrants in several jurisdictions under different identities. He claimed to have bought two identities on the dark web for $4,800 in two transactions. He discussed changing his identity to avoid warrants and financial obligations. He also said that he has trouble getting a job and driver license (he is a commercial driver) due to his felony record under his true name.

The KY Birth Certificate was sent to the defendant using the U.S. Mail.

## VI. ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A. Base Offense Level: For Count 1, both parties agree the base guideline is §2L2.2, with a base offense level of **8**. For Count 2, the parties disagree as to the base guideline. The government believes that the base guideline is §2B1.1, with a base offense level of **6**. The defendant believes that the base guideline for Count 2 is §2L2.2, with a base offense level of **8**.

B. Specific Offense Characteristics: For Count 2 under the government's position applying base guideline §2B1.1, because the offense involved the possession or use of any device-making equipment or authentication feature (specifically the Terry Mitchell notary stamp), the level should be increased to **12** pursuant to §2B1.1(b)(11). The defendant asserts that using base guideline §2L2.2, there are no specific offense characteristics.

C. There are no victim-related or obstruction adjustments.

D. Under the government's calculation, there is a **two-level** increase in offense level from the multiple count adjustment with 2 Units pursuant to §3D1.4.

13

§3D1.4. Under the defendant's calculation, there are no adjustments for grouping of counts.

E. Under the government's calculation, for Count 1, the adjusted offense level would be **10**. For Count 2, under the government's calculation, the adjusted offense level would be **14**. Under the defendant's calculation, the adjusted offense level would be 8 as to Counts 1 and 2.

F. <u>Acceptance of Responsibility</u>: For Counts 1 and 2, the defendant should receive a **2-level decrease** for acceptance of responsibility under §3E1.1. Under the government's calculation, the resulting total offense level is 12. Under the defendant's calculation, the resulting total offense level is 6.

G. <u>Criminal History Category</u>: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available, the parties estimate the defendant's Criminal History Category is **VI**.

H. Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

I. <u>Imprisonment</u>: For the government's calculation, the advisory guideline range of imprisonment for all counts resulting from an offense level of **12** and a Criminal History Category VI is **30 – 37 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 10 months (bottom of Category I) to 37 months (top of Category VI).

For the defendant's calculation, the advisory guideline range of imprisonment for all counts resulting from an offense level of **6** and a Criminal History Category VI is **12 – 18 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 0 months (bottom of Category I) to 18 months (top of Category VI).

Moreover, because of the defendant's conviction on Counts 3 and 4, no less than an additional **24 months imprisonment** must be imposed to run consecutively to any term of imprisonment imposed for the underlying felony. For multiple convictions under 1028A, such counts may, at the discretion of the court, run concurrently, in whole or in part, with each other. §2B1.6, app. note 1(B). This could result in a sentence of up to **48 months imprisonment** consecutive to any term of imprisonment imposed for the underlying felony.

The guideline range would not exceed, in any case, the statutory maximum applicable to the counts of conviction.

J.     Fine: Pursuant to guideline §5E1.2, assuming the estimated offense level of **6**, the fine range for Count 1 would be **$ 1,000 to $9,500**, plus applicable interest and penalties. Assuming the estimated offense level of **12**, the fine range for Count 2 under the government's calculation would be **$ 5,500 to $55,000**, plus applicable interest and penalties.

K.     Supervised Release: Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term is **no more than 3 years** for each count.

L.     Restitution: Restitution is not applicable.

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the Court is the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither

the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 5-5-20   *James Michael Austin*
James Michael Austin
Defendant

Date: 5-7-20   *Martha H. Eskesen*
Martha H. Eskesen
Attorney for Defendant

Date: 05/13/2020   *s/ Gregory A. Holloway*
Gregory A. Holloway, Assistant U.S. Attorney
Attorney for the Government